# EXHIBIT A-2

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF LAND MANAGEMENT

Serial No.    UTU-0126947

**MODIFIED COAL LEASE**

Date of Lease:   December 1, 1963

**PART I.**

**THIS MODIFIED COAL LEASE** is entered into on March 1, 2021, by and between the **UNITED STATES OF AMERICA**, hereinafter called the Lessor, through the Bureau of Land Management, and hereinafter called Lessee.

Emery County Coal Resources Inc.
46226 National Road
St. Clairsville, OH 43950

This modified lease shall retain the effective date of December 1, 1963, of the original **COAL LEASE UTU-0126947**, and is effective for a period of 20 years from the date of issuance of the lease, dated December 1, 1963, and for so long thereafter as coal is produced in commercial quantities from the leased lands, subject to readjustment of lease terms at the end of each 10 year lease period thereafter.

**Sec. 1.**  This lease is issued pursuant and subject to the terms and provisions of the: (NOTE:  Check the appropriate Act or Acts.)

   XX Mineral Lands Leasing Act of 1920, as amended, 41 Stat. 437, 30 U.S.C. 181-287, hereinafter referred to as the Act;

   _ Mineral Leasing Act for Acquired Lands of 1947, 61 Stat. 913, 30 U.S.C. 351-359;

and to the regulations and formal orders of the Secretary of the Interior which are now or hereafter in force, when not inconsistent with the express and specific provisions herein.

**Sec. 2.**  Lessees as the holders of Coal Lease UTU-0126947, issued effective December 1, 1963, were granted the exclusive right and privilege to drill for, mine, extract, remove or otherwise process and dispose of the coal deposits in, upon, or under the lands described below as Tract 1.

The Lessor in consideration of fair market value, rents and royalties to be paid, and the conditions and covenants to be observed as herein set forth, hereby grants and leases to Lessee the exclusive right and privilege to drill for, mine, extract, remove, or otherwise process and dispose of the coal deposits in, upon, or under the lands described below as Tract 2.

**Tract 1:**
Salt Lake Meridian, Utah
T. 16 S., R., 14 E.,
   sec. 13, E1/2;
   sec. 24, E1/2;
   sec. 25, N1/2NE1/4, SE1/4NE1/4.
T. 16 S., R., 15 E.,
   sec. 19, lots 3, 4, SE1/4SW1/4;
   sec. 30, lots 1, 2, E1/2NW1/4, SW1/4NE1/4.
The area described contains 1,059.81 acres

**Tract 2:**
Salt Lake Meridian, Utah
T. 16 S., R. 15 E.,
   sec. 18, S1/2SE1/4SW1/4 and SW1/4SW1/4SE1/4;
   sec. 19, lot 2, WI/2NW1/4NE1/4, SE1/4NW1/4NE1/4, E1/2NW1/4, NE1/4SW1/4,
      SW1/4NE1/4, W1/2NE1/4SE1/4, W1/2SE1/4, and SE1/4SE1/4;
   sec. 29, SW1/4NW1/4NW1/4, S1/2NW1/4, SW1/4, SW1/4NW1/4SE1/4, and
      W1/2SW1/4SE1/4;
   sec. 30, N1/2NE1/4, SE1/4NE1/4 and SE1/4.
The area described contains 954.80 acres

containing 2,014.61 acres, more or less, together with the right to construct such works, buildings, plants, structures, equipment and appliances and the right to use such on-lease rights-of-way which may be necessary and convenient in the exercise of the rights and privileges granted, subject to the conditions herein provided.

Part II. TERMS AND CONDITIONS

**Sec. 1.(a)    RENTAL RATE** - Lessee shall pay Lessor rental annually and in advance for each acre or fraction thereof during the continuance of the lease at the rate of $3.00 per acre for each lease year.

**(b)    RENTAL CREDITS** - Rental shall not be credited against either production or advance royalties for any year.

**Sec. 2.(a)    PRODUCTION ROYALTIES** - The royalty shall be 12 ½ of the value of coal produced by strip or auger mining methods and 8 percent of the value of the coal as set forth in the regulations. Royalties are due to Lessor the final day of the month succeeding the calendar month in which the royalty obligation accrues.

**(b)    ADVANCE ROYALTIES** - Upon request by the Lessee, the authorized officer may accept, for a total of not more than 20* years, the payment of advance royalties in lieu of continued operation, consistent with the regulations. The advance royalty shall be based on a percent of the value of a minimum number of tons determined in the manner established by the advance royalty regulations in effect at the time the Lessee requests approval to pay advance royalties in lieu of continued operation.
   * 20 years (Public Law 109-58)

**Sec. 3. BONDS** - Lessee shall maintain in the proper office a lease/LMU bond in the amount of $1,588,000. The authorized officer may require an increase in this amount when additional coverage is determined appropriate.

**Sec. 4.   DILIGENCE** - This lease is subject to the conditions of diligent development and continued operation except that these conditions are excused when operations under the lease are interrupted by strikes, the elements, or casualties not attributable to the Lessee. The Lessor, in the public interest, may suspend the condition of continued operation upon payment of advance royalties in accordance with the regulations in existence at the time of the suspension.

The Lessor reserves the power to assent to or order the suspension of the terms and conditions of this lease in accordance with, <u>inter alia</u>, Section 39 of the Mineral Leasing Act, 30 U.S.C. 209.

**Sec. 5.   LOGICAL MINING UNIT (LMU)** – Either upon approval by the Lessor of the Lessee's application or at the direction of the Lessor, this lease shall become an LMU or part of an LMU, subject to the provisions set forth in the regulations.

The stipulations established in an LMU approval in effect at the time of LMU approval or modification will supersede the relevant inconsistent terms of this lease so long as the lease remains committed to the LMU. If the LMU of which this lease is a part is dissolved, the lease shall then be subject to the lease terms which would have been applied if the lease had not been included in an LMU. This lease was placed in the North Block LMU effective March 3, 1999.

**Sec. 6.   DOCUMENTS, EVIDENCE AND INSPECTION** - At such times and in such form as Lessor may prescribe, Lessee shall furnish detailed statements showing the amounts and quality of all

products removed and sold from the lease, the proceeds therefrom, and the amount used for production purposes or unavoidably lost.

Lessee shall keep open at all reasonable times for the inspection of any duly authorized officer of Lessor, the leased premises and all surface and underground improvements, works, machinery, ore stockpiles, equipment, and all books, accounts, maps, and records relative to operations, surveys, or investigations on or under the leased lands.

Lessee shall allow Lessor access to and copying of documents reasonably necessary to verify Lessee compliance with terms and conditions of the lease.

While this lease remains in effect, information obtained under this section shall be closed to inspection by the public in accordance with the Freedom of Information Action (5 U.S.C. 552).

**Sec. 7. DAMAGES TO PROPERTY AND CONDUCT OF OPERATIONS** - Lessee shall comply at its own expense with all reasonable orders of the Secretary, respecting diligent operations, prevention of waste, and protection of other resources.

Lessee shall not conduct exploration operations, other than casual use, without an approved exploration plan. All exploration plans prior to the commencement of mining operations within an approved mining permit area shall be submitted to the authorized officer.

Lessee shall carry on all operations in accordance with approved methods and practices as provided in the operating regulations, having due regard for the prevention of injury to life, health, or property, and prevention of waste, damage or degradation any land, air, water, cultural, biological, visual, and other resources, including mineral deposits and formations of mineral deposits not leased hereunder, and to other land uses or users. Lessee shall take measures deemed necessary by Lessor to accomplish the intent of this lease term. Such measures may include, but not limited to, modification to proposed siting or design of facilities, timing of operations, and specifications of interim and final reclamation procedures. Lessor reserves to itself the right to lease, sell, or otherwise dispose of the surface or other mineral deposits in the lands and the right to continue existing uses and to authorize future uses upon or in the leased lands, including issuing leases for mineral deposits not covered hereunder and approving easements or rights-of-way. Lessor shall condition such uses to prevent unnecessary or unreasonable interference with rights of Lessee as may be consistent with concepts of multiple use and multiple mineral development.

**Sec. 8 PROTECTION OF DIVERSE INTERESTS, AND EQUAL OPPORTUNITY** - Lessee shall: pay when due all taxes legally assessed and levied under the laws of the State or the United States; accord all employees complete freedom of purchase; pay all wages at least twice each month in lawful money of the United States; maintain a safe working environment in accordance with standard industry practices; restrict the workday to not more than 8 hours in any one day for underground workers, except in emergences; and take measures necessary to protect the health and safety of the public. No person under the age of 16 years shall be employed in any mine below the surface. To the extent that laws of the State in which the lands are situated are more restrictive than the provisions in this paragraph, then the State laws apply.

Lessee will comply with all provisions of Executive Order No. 11246 of September 24, 1965, as amended, and the rules, regulations, and relevant orders of the Secretary of Labor. Neither Lessee nor Lessee's subcontractors shall maintain segregated facilities.

**Sec. 9.(a) TRANSFERS**
(Check the appropriate space)

_X_  This lease may be transferred in whole or in part to any person, association or corporation qualified to hold such lease interest.

___  This lease may be transferred in whole or in part to another public body, or to a person who will mine the coal on behalf of, and for the use of, the public body or to a person who for the limited purpose of creating a security interest in favor of a lender agrees to be obligated to mine the coal on behalf of the public body.

___  This lease may only be transferred in whole or in part to another small business qualified under 13 CFR 121.

Transfers of record title, working or royalty interest must be approved in accordance with the regulations.

**(b) RELINQUISHMENTS** - The Lessee may relinquish in writing at any time all rights under this lease or any portion thereof as provided in the regulations. Upon Lessor's acceptance of the

relinquishment, Lessee shall be relieved of all future obligations under the lease or the relinquished portion thereof, whichever is applicable.

Sec. 10. **DELIVERY OF PREMISES, REMOVAL OF MACHINERY, EQUIPMENT, ETC.** - At such times as all portions of this lease are returned to Lessor, Lessee shall deliver up to Lessor the land leased, underground timbering, and such other supports and structures necessary for the preservation of the mine workings on the leased premises or deposits and place all workings in condition for suspension or abandonment. Within 180 days thereof, Lessee shall remove from the premises all other structures, machinery, equipment, tools, and materials that it elects to or as required by the authorized officer. Any such structures, machinery, equipment, tools, and materials remaining on the leased lands beyond 180 days, or approved extension thereof, shall become the property of the Lessor, but Lessee shall either remove any or all such property or shall continue to be liable for the cost of removal and disposal in the amount actually incurred by the Lessor. If the surface is owned by third parties, Lessor shall waive the requirement for removal, provided the third parties do not object to such waiver. Lessee shall, prior to the termination of bond liability or at any other time when required and in accordance with all applicable laws and regulations, reclaim all lands the surface of which has been disturbed, dispose of all debris or solid waste, repair the offsite and onsite damage caused by Lessee's activity or activities incidental thereto, and reclaim access roads or trails.

Sec. 11. **PROCEEDINGS IN CASE OF DEFAULT** - If Lessee fails to comply with applicable laws, existing regulations, or the terms, conditions and stipulations of this lease, and the noncompliance continues for 30 days after written notice thereof, this lease shall be subject to cancellation by the Lessor only by judicial proceedings. This provision shall not be construed to prevent the exercise by Lessor of any other legal and equitable remedy, including waiver of the default. Any such remedy or waiver shall not prevent later cancellation for the same default occurring at any other time.

Sec. 12. **HEIRS AND SUCCESSORS - IN-INTEREST** - Each obligation of this lease shall extend to and be binding upon, and every benefit hereof shall insure to, the heirs, executors, administrators, successors, or assigns of the respective parties hereto.

Sec. 13. **INDEMNIFICATION** - Lessee shall indemnify and hold harmless the United States from any and all claims arising out of the Lessee's activities and operations under this lease.

Sec. 14. **SPECIAL STATUTES** - This lease is subject to the Federal Water Pollution Control Act (33 U.S.C. 1151 - 1175); the Clean Air Act (42 U.S.C. 1857 et seq.), and to all other applicable laws pertaining to exploration activities, mining operations and reclamation, including the Surface Mining Control and Reclamation Act of 1977 (30 U.S.C. 1201 et seq.)

Sec. 15. **SPECIAL STIPULATIONS** -

## SEE ATTACHED STIPULATIONS

The United States of America

**Emery County Coal Resources Inc.**
Company or Lessee Name

BY _____

_____[signature]_____
(Signature of Lessee)

_____[signature]_____
(Signing Officer)

PRESIDENT
(Title)

DEPUTY STATE DIRECTOR
(Title)

1-12-2021
(Date)

1/13/2021
(Date)

Title 18 U.S.C. Section 1001, makes it a crime for any person knowingly and willfully to make to any department or agency of the United States any false, fictitious or fraudulent statements or representations as to any matter within its jurisdiction.

6

## SPECIAL STIPULATIONS FOR UTU-0126947
## MODIFIED COAL LEASE

1. In accordance with Sec. 523(b) of the "Surface Mining Control and Reclamation Act of 1977," surface mining and reclamation operations conducted on this lease are to conform with the requirements of this act and are subject to compliance with Office of Surface Mining regulations, or as applicable the Utah program approved under the cooperative agreement in accordance with sec. 523(c). The United States Government does not warrant that the entire tract will be susceptible to mining.

2. Before undertaking activities that may disturb the surface of previously undisturbed leased lands, the lessee may be required to conduct a cultural resource inventory and a paleontological appraisal of the areas to be disturbed. These studies shall be conducted by qualified professional cultural resource specialists or qualified paleontologists, as appropriate, and a report prepared itemizing the findings. A plan will then be submitted making recommendations for the protection of, or measures to be taken to mitigate impacts for identified cultural or paleontological resources.

If cultural resources or paleontological remains (fossils) of significant scientific interest are discovered during operations under this lease, the lessee prior to disturbance shall, immediately bring them to the attention of the Authorized Officer. Paleontological remains of significant scientific interest do not include leaves, ferns, or dinosaur tracks commonly encountered during underground mining operations.

The cost of conducting the inventory, preparing reports, and carrying out mitigating measures shall be borne by the lessee.

3. If there is reason to believe that Threatened or Endangered (T&E) species of plants or animals, or migratory bird species of high Federal interest occur in the area, the Lessee shall be required to conduct an intensive field inventory of the area to be disturbed and/or impacted. The inventory shall be conducted by a qualified specialist and a report of findings will be prepared. A plan will be prepared making recommendations for the protection of these species or action necessary to mitigate the disturbance.

The cost of conducting the inventory, preparing reports, and carrying out mitigating measures shall be borne by the lessee.

4. Before undertaking activities that may disturb the surface of previously undisturbed leased lands, the lessee may be required to conduct a paleontological appraisal of the areas to be disturbed. The appraisal shall be conducted by a qualified paleontologist and a report prepared itemizing the findings.

A plan will then be submitted making recommendations for the protection of, or measures to be taken to mitigate impacts for identified paleontological resources.
If paleontological remains (fossils) of significant scientific interest are discovered during operations under this lease, the lessee shall immediately bring them to the attention of the authorized officer who shall evaluate, or have evaluated such discoveries and, within 5 working

days, shall notify the lessee what action shall be taken with respect to such discoveries. Paleontological remains of significant scientific interest do not include leaves, ferns, or dinosaur tracts commonly encountered during underground mining.

The cost of conducting the inventory, preparing reports, and carrying out necessary protective mitigating measure shall be borne by the lessee. The cost of salvage of paleontological remains (fossils) shall be borne by the United States.

5. The Lessee shall be required to perform a study to secure adequate baseline data to quantify the existing surface resources on and adjacent to the lease area. Existing data may be used if such data are adequate for the intended purposes. The study shall be adequate to locate, quantify, and demonstrate the interrelationship of the geology, topography, surface and ground water hydrology, vegetation and wildlife. Baseline data will be established so that future programs of observation can be incorporated at regular intervals for comparison.

6. Powerlines used in conjunction with the mining of coal from this lease shall be constructed so as to provide adequate protection for raptors and other large birds. When feasible, powerlines will be located at least 100 yards from public roads.

7. The lessee shall provide for the suppression and control of fugitive dust on haul roads and at coal-handling and storage facilities on the lease area. The migration of road surfacing and subsurface materials into streams and water courses shall be prevented.

8. The lessee shall be required to establish a monitoring system to locate, measure, and quantify the progressive and final effects of underground mining activities on the topographic surface, underground and surface hydrology and vegetation. The monitoring system shall utilize techniques which will provide a continuing record of change over time and an analytical method for location and measurement of a number of points over the lease area. The monitoring shall incorporate and be an extension of the baseline data. The monitoring system shall be adequate to locate and quantify, and demonstrate the interrelationship of the geology, topography, surface hydrology, vegetation and wildlife.

9. Except at locations specifically approved by the Authorized Officer with concurrence of the surface management agency, underground mining operations shall be conducted in such a manner so as to prevent surface subsidence that would: (1) cause the creation of hazardous conditions such as potential escarpment failure and landslides, (2) cause damage to existing surface structures, and (3) damage or alter the flow of perennial streams. The lessee shall provide specific measures for the protection of escarpments and determine corrective measures to assure that hazardous conditions are not created.

10. In order to avoid surface disturbance on steep canyon slopes and to preclude the need for surface access, all surface breakouts for ventilation tunnels shall be constructed from inside the mine, except at specifically approved locations.

11. If removal of timber is required for clearing of construction sites, etc., such timber shall be removed in accordance with the regulation of the surface management agency.

12. Support facilities, structures, equipment, and similar developments will be removed from the lease area within 2 years after the final termination of use of such facilities. This provision shall apply unless the requirement of Section 10 of the lease form is applicable. Disturbed areas and those areas previously occupied by such facilities will be stabilized and rehabilitated, drainages reestablished, and the areas returned to an authorized post mining land use.

13. The Lessee at the conclusion of the mining operation, or at other times as surface disturbance related to mining may occur, will replace all damaged, disturbed, or displaced corner monuments (section corners, quarter corners, etc.) their accessories and appendages (witness trees, bearing trees, etc.), or restore them to their original condition and location, or at other locations that meet the requirements of the rectangular surveying system. This work shall be conducted at the expense of the Lessee, by BLM to the standards and guidelines found in the Manual of Surveying Instructions, U.S. Department of Interior.

14. Notwithstanding the approval of a resource recovery and protection plan by the BLM, lessor reserves the right to seek damages against the operator/lessee in the event (I) the operator/lessee fails to achieve maximum economic recovery [as defined at 43 C.F.R. § 3480.0-5(21)] of the recoverable coal reserves or (ii) the operator/lessee is determined to have caused a wasting of recoverable coal reserves. Damages shall be measured on the basis of the royalty that would have been payable on the wasted or un-recovered coal.

The parties recognize that under an approved R2P2, conditions may require a modification by the operator/lessee of that plan. In the event a coal bed or portion thereof is not to be mined or is rendered unminable by the operation, the operator shall submit appropriate justification to obtain approval by the AO to leave such reserves unmined. Upon approval by the AO, such coal beds or portions thereof shall not be subject to damages as described above. Further, nothing in this section shall prevent the operator/lessee from exercising its right to relinquish all or a portion of the lease as authorized by statute and regulation.

In the event the AO determines that the R2P2 modification will not attain MER resulting from changed conditions, the AO will give proper notice to the operator/lessee as required under applicable regulations. The AO will order a new R2P2 modification if necessary, identifying additional reserves to be mined in order to attain MER. Upon a final administrative or judicial ruling upholding such an ordered modification, any reserves left un-mined (wasted) under that plan will be subject to damages as described in the first paragraph under this section.
Subject to the right to appeal hereinafter set forth, payment of the value of the royalty on such un-mined recoverable coal reserves shall become due and payable upon determination by the AO that the coal reserves have been rendered un-minable or at such time that the lessee has demonstrated an unwillingness to extract the coal.

The BLM may enforce this provision either by issuing a written decision requiring payment of the MMS demand for such royalties, or by issuing a notice of non-compliance. A decision or notice of noncompliance issued by the lessor that payment is due under this stipulation is appealable as allowed by law.

15. The lessee, at his expense, will be responsible to replace any surface water sources identified for protection, that may be lost or adversely affected by mining operations, with water from an

9

alternate source in sufficient quantity and quality to maintain existing riparian habitat, fishery habitat, livestock and wildlife use, or other land uses (authorized by 26 C.F.R. § 251).

16. WASTE CERTIFICATION: The lessee shall provide upon abandonment and/or sealing off a mined area and prior to lease termination/relinquishment, certification to the lessor that, based upon a complete search of all the operator's records for the mine and upon their knowledge of past operations, there has been no hazardous substances per (40 C.F.R. § 302.4) or used oil as per Utah State Management Rule R315-15, deposited within the lease, either on the surface or underground, or that all remedial action necessary has been taken to protect human health and the environment with respect to any such substances remaining on the property. The back-up documentation to be provided shall be described by the lessor prior to the first certification and shall include all documentation applicable to the Emergency Planning and Community Right-to-know Act (EPCRA, Public Law 99-499), Title III of the Superfund Amendments and Reauthorization Act of 1986 or equivalent.

17. ABANDONMENT OF EQUIPMENT: The lessee/operator is responsible for compliance with reporting regarding toxic and hazardous material and substances under Federal Law and all associated amendments and regulations for the handling such materials on the land surface and in underground mine workings.

The lessee/operator must remove mine equipment and materials not needed for continued operations, roof support and mine safety from underground workings prior to abandonment of mine sections. Exceptions can be approved by the Authorized Officer (BLM) in consultation with the surface management agency. Creation of a situation that would prevent removal of such material and by retreat or abandonment of mine sections without prior authorization would be considered noncompliance with lease terms and conditions and subject to appropriate penalties under the lease.

18. UNDERGROUND INSPECTION: All safe and accessible areas shall be inspected prior to being sealed. The lessee shall notify the Authorized Officer in writing 30 days prior to the sealing of any areas in the mine and state the reason for closure. Prior to seals being put into place, the lessee shall inspect the area and document any equipment/machinery, hazardous substances, and used oil that is to be left underground.

The purpose of this inspection will be: (1) to provide documentation for compliance with 42 U.S.C. 9620 section 120(h) and State Management Rule R-315-15, and to assure that certification will be meaningful at the time of lease relinquishment, (2) to document the inspection with a mine map showing location of equipment/machinery (model, type of fluid, amount remaining, batteries etc.) that is proposed to be left underground. In addition, these items will be photographed at the lessee's expense and shall be submitted to the Authorized Officer as part of the certification. The abandonment of any equipment/machinery shall be on a case by case basis and shall not be accomplished unless the Authorized Officer has granted a written approval.

The purpose of this inspection will be: (1) to provide documentation for compliance with 42 U.S.C. 9620 SECTION 120(h) and State Management Rule R-315-15, and to assure that

certification will be meaningful at the time of lease relinquishment, (2) to document the inspection with a mine map showing location of equipment/machinery (model, type of fluid, amount remaining, batteries etc.) that is proposed to be left underground. In addition, these items will be photographed at the lessee's expense and shall be submitted to the Authorized Office as part of the certification. The abandonment of any equipment/machinery shall be on a case by case basis and shall not be accomplished unless the Authorized Officer has granted a written approval.

19. FAIR MARKET VALUE BONUS : Pursuant to 43 C.F.R. § 3432.2(c), "the lands applied for shall be added to the existing lease without competitive bidding, but the United States shall receive the fair market value of the lease of the added lands, either by cash payment or adjustment of the royalty applicable to the lands added to the lease by the modification." The BLM will implement this requirement by adding the bonus obligation owed for mining the coal in these two tracts and it will be reported in addition to the royalty. The lessee will pay the fair market value (FMV) bonus payment for the coal resources produced in the Federal coal lease modifications for Federal Coal Leases UTU-014218 designated as Tract 2 and UTU-0126947 designated as Tract 2 on the Federal Coal Lease Form.

The FMV was determined at $0.39 per ton of the actual coal produced. This rate shall be adjusted by the BLM annually (previous 12 months) using the U. S. Bureau of Labor Statistics CPI West Urban Energy Index; or if that index is not available an index that is mutually agreed to by the lessee and the authorized officer will be used.

Payment of the bonus shall be at the specified FMV rate ($0.39 per ton) plus the adjustment times the monthly tonnage mined in each tract. This will be on the schedule required for payment of production royalties to the Office of Natural Resources Revenue (ONRR). The lessee will clearly indicate which portion of the payment is for underground royalty of 8% (or approved reduced royalty rate) and the value for the lease bonus payment ($0.39 plus adjustment). The lessee shall notify the BLM when mining has begun on the tracts and the BLM will calculate the adjustment value of the bonus bid shall be for the next 12 months. Each month as part of the production verification, the lessee shall identify to the BLM the amount of coal mined in these 2 tracts as a separate line item the submission.

20. In addition, the lessee shall employ measures that will minimize exposure of the general public to air pollutants exhausting from mine portals/audits. Measures may include the use of fencing or other physical barriers, natural barriers, signage, or other measures that preclude public access to the portals/adits. Persons who require legal or practical access to the air vents, such as mine employees or business invitees and guests of the mine, are not considered members of the general public and would continue to have access to these areas.