THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| SIERRA CLUB and SOUTHERN UTAH WILDERNESS ALLIANCE,<br><br>Plaintiff,<br><br>v.<br><br>KENT HOFFMAN, in his official capacity as Deputy State Director, Division of Lands and Minerals, Utah State Office, U.S. Bureau of Land Management; U.S. BUREAU OF LAND MANAGEMENT; and U.S. DEPARTMENT OF THE INTERIOR,<br><br>Defendant,<br><br>EMERY COUNTY COAL RESOURCES INC.,<br><br>Intervenor-Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING MOTION FOR VOLUNTARY REMAND WITHOUT VACATUR**<br><br>Case No. 4:22-cv-00037-DN<br><br>District Judge David Nuffer |

Plaintiffs Sierra Club and Southern Utah Wilderness Alliance (collectively "Conservation Groups") brought this case challenging the lease modification for the Lila Canyon coal mine as violating the National Environmental Policy Act ("NEPA") and the Administrative Procedure Act ("APA").[1] Defendants Kent Hoffman, in his official capacity as Deputy State Director, Division of Lands and Minerals, Utah State Office, U.S. Bureau of Land Management; U.S. Bureau of Land Management ("BLM"); and U.S. Department of the Interior ("DOI")

[1] Complaint for Declaratory and Injunctive Relief ("Complaint"), docket no. 2, filed June 10, 2022. This order is rife with abbreviations, defined when first used. Most can be found in the list of Abbreviations found at page iv of the Lila Canyon Mine Lease Modifications Environmental Assessment Emery County, Utah, docket no. 48-3, (CM/ECF Page ID 272) filed December 19, 2022.

(collectively "BLM") move to remand without vacatur ("Motion").[2] The Motion states that federal courts across the country have found that BLM's greenhouse gas ("GHG") and economic analysis is legally deficient.[3] BLM asks for remand without vacatur[4] in order to give BLM the opportunity to "revisit its analysis of the socioeconomic and environmental costs associated with GHG emissions."[5] BLM "intends to perform a supplemental NEPA analysis, including public comment, and will determine whether to affirm the challenged Decision, issue a different decision, or perform additional NEPA analysis if it can no longer reach a finding of no significant impact."[6]

The Conservation Groups do "not oppose BLM's request for voluntary remand and do not ask this Court to vacate the challenged decision at this time."[7] Instead, the Conservation Groups ask that remand include "reasonable conditions" to "guard against a scenario where the coal company mines the expanded lease areas before BLM completes the remand process."[8]

Intervenor-Defendant Emery County Coal Resources Inc. ("ECCR") argues that remand would infringe on "ECCR's leasehold rights, [and that the Motion] fails to meet the established standards for voluntary remand and retroactively applies GHG policies not in effect on the date

---

[2] Federal Defendants' Motion for Voluntary Remand Without Vacatur and Memorandum in Support ("Motion"), docket no. 42, filed November 28, 2022.

[3] Motion at 6 (*citing Utah Physicians for a Healthy Env't v. U.S. Bureau of Land Mgmt.*, 528 F. Supp. 3d 1222, 1231-32 (D. Utah 2021); *350 Montana v. Haaland*, 50 F.4th 1254, 1272 (9th Cir. 2022); *WildEarth Guardians v. Bernhardt*, CV 17-80-BLG-SPW, 2021 WL 363955, at *9 (D. Mont. Feb. 3, 2021)).

[4] Motion at 5.

[5] Exhibit 1 to Motion ¶ 5, at 2, Declaration of Deputy State Director of Lands and Minerals, Bureau of Land Management Utah State Office ("Price Decl."), docket no. 42-1, filed November 28, 2022.

[6] Motion at 8.

[7] Plaintiffs' Response to Federal Defendants' Motion for Voluntary Remand Without Vacatur and Memorandum in Support ("Conservation Groups' Response"), docket no. 47, filed December 19, 2022.

[8] *Id*. at 3.

of its decision."[9] However, should the Motion be granted, ECCR "respectfully asks the Court to do so without vacating the Lease Modifications."[10]

A full review of the parties' memoranda, applicable case law, and other authorities has been completed. For the reasons stated below, the Motion is GRANTED.

**Contents**


1 BACKGROUND ........ 3
2 STANDARD OF REVIEW ........ 8
3 DISCUSSION ........ 9
3.1.1 GHG Decisions by Other Courts Favor Remand ........ 9
3.1.2 The New Executive Orders Favor Remand ........ 10
3.1.3 ECCR's Opposition Provides No Basis to Deny Voluntary Remand ........ 10
3.2 ........ **Error! Bookmark not defined.**
3.3 Safeguards Are Appropriate ........ 15
4 ORDER ........ 16


## 1 BACKGROUND

The Lila Canyon Mine ("the Mine") is an underground coal mine located in Emery County, Utah, operated ECCR.[11] The Mine sits north of the Price River and west of the Book Cliffs, just south of the boundary between Carbon and Emery Counties,[12] less than a quarter mile from the Turtle Canyon Wilderness along the western slope of Utah's Book Cliffs region.[13] ECCR or its predecessors have held two long-standing federal coal leases on this land: lease UTU-014218, dated February 1, 1955, and UTU-0126947, dated December 1, 1963.[14] Since 2007, coal has been mined from a Logical Mining Unit which includes both leases.[15] When the

[9] Emery County Coal Resources Inc.'s Response to Defendants' Motion for Voluntary Remand Without Vacatur and Memorandum in Support ("ECCR's Response"), docket no. 48, filed December 19, 2022.

[10] *Id*. at 1.

[11] ECCR's Response ¶ 1, at 4 (*citing* Lila Canyon Mine Lease Modifications Environmental Assessment Emery County, Utah submitted as Exhibit B to ECCR Response ("EA"), docket no. 48-3, filed December 19, 2022).

[12] Motion at 2.

[13] Complaint ¶ 33, at 9.

[14] ECCR's Response ¶ 1, at 4.

[15] *Id*. ¶ 12, at 6.

mines are fully operational, ECCR directly employs approximately 230–250 mine workers and administrative personnel, producing over 3 million tons of coal annually.[16] The Mine's coal supplies the Hunter Power Plant and the Huntington Power Plant in Emery County, which together provide 24% of Utah's total electric generation capacity.[17]

In late 2017, the original leaseholder, UtahAmerican Energy, Inc. ("UEI"), applied to BLM to expand the Mine's lease into adjacent areas totaling approximately 1,272.64 acres.[18] These areas consist of mineral estate managed by BLM and surface estate managed primarily by BLM, with one small tract managed by the State of Utah.[19] Access to the proposed expansion areas runs through existing underground portals already used to access the original lease coal reserves.[20]

On March 28, 2017, President Trump issued Executive Order 13,783 ("EO 13,783"), which rescinded an Obama administration policy requiring that rulemaking proposals be supported by monetary estimates of the socioeconomic impact of GHG emissions.[21] EO 13,783 also disbanded the Interagency Working Group on Social Cost of Greenhouse Gases ("IWG"), effectively withdrawing the Social Cost of Carbon ("SCC") Protocol, a framework used to analyze the social and economic impact of GHG emissions.[22]

---

[16] *Id*. at 17.

[17] ECCR's Response ¶ 10, at 3-4.

[18] Motion at 2.

[19] *Id*. at 2-3.

[20] *Id*. at 3.

[21] ECCR's Response ¶ 3, at 2 (*citing* Exec. Order No. 13,783, Promoting Energy Independence and Economic Growth, 82 Fed. Reg. 16,093 (Mar. 31, 2017))

[22] *Id*.

BLM analyzed UEI's application and considered public input after EO 13,783 was issued.[23] BLM listed a "proposed action" for the project on its Planning website on May 14, 2018.[24] BLM then consulted with tribal representatives beginning in October 2018.[25] BLM later incorporated by reference a 2019 analysis and air quality report from the nearby Williams Draw area into its review.[26] BLM published a draft Environmental Assessment ("EA") open for public comment from April 24, 2020, to June 8, 2020, receiving a total of 1,409 submissions.[27] After the notice and comment period ended, BLM made "minor changes" and released the Final EA and Decision Record in January 2021.[28]

In its EA, BLM considered two alternatives: (1) a "no action" alternative, under which it would not approve the lease expansion, and (2) a "proposed action," under which it would approve the expansion subject to standard and special lease stipulations.[29] BLM's stated purpose and need for the project was to respond to the application in accordance with applicable law and policy recognizing "the nation's need for domestic sources of minerals."[30] The EA analyzed direct and indirect GHG emissions, conducted a near-field modeling analysis of air quality impacts, and briefly addressed the SCC.[31] However, BLM ultimately concluded it would not undertake an SCC analysis, reasoning that the IWG materials were intended only to aid rulemaking and were not directly applicable to NEPA documents, that the SCC Protocol had

---

[23] Motion at 3.

[24] *Id*.

[25] *Id*.

[26] Motion at 4.

[27] *Id*. at 3.

[28] *Id*.

[29] *Id*. at 3.

[30] *Id*. (*citing* EA at 5).

[31] *Id*. ¶ 5, at 3.

been withdrawn;[32] that NEPA does not require cost-benefit analysis;[33] and that insufficient monetization of social effects could produce information that is "incomplete, potentially inaccurate, and not useful."[34]

UEI underwent bankruptcy proceedings and reorganization. In September 2020, its leases were conveyed to ECCR.[35]

On January 5, 2021, in the final days of the first Trump administration, BLM approved the Decision Record ("DR") for the Lila Canyon Mine lease modifications, issuing a Finding of No Significant Impact ("FONSI")[36] and formally approving the lease expansion into an additional 1,272.64 acres of publicly-owned lands and minerals.[37] The expansion is projected to extend the life of the Mine by two to three years[38] and allow for the extraction of an additional 7.2 million tons of salable coal,[39] with anticipated mining activity emitting 11.4 million tons of GHG emissions annually.[40] The DR granted UEI the right of entry and exclusive rights to the coal deposits in the expansion areas.[41]

Actual mining operations in the expanded area cannot begin until ECCR obtains further approvals, including a detailed Mining and Reclamation Plan, from both the Utah Division of

[32] *Id*. (*citing* EA at 49).
[33] *Id*. at 4.
[34] *Id*. (*citing* EA at 49).
[35] *Id*., fn.2 at 3.
[36] ECCR's Response ¶ 4, at 2 (*citing* EA).
[37] Conservation Groups' Response at 2.
[38] EA at 2-12.
[39] Conservation Groups' Response at 2.
[40] Complaint ¶ 3, at 2.
[41] Motion at 3.

Oil, Gas and Mining ("DOGM") and the federal Office of Surface Mining Reclamation and Enforcement ("OSMRE").[42]

On January 20, 2021, President Biden issued Executive Order 13,990 ("EO 13,990"),[43] reinstating Obama-era policies requiring social cost of carbon estimates and re-constituting the IWG.[44] EO 13,990 directed the IWG to update the SCC Protocol, publish new per-unit cost estimates for GHG emissions, and instructed federal agencies to apply the SCC when evaluating rulemaking proposals.[45]

After EO 13,990 was issued, the Conservation Groups filed suit challenging BLM's decision to approve the lease expansion, arguing the approval was "arbitrary and capricious, contrary to law," and in violation of NEPA and the Administrative Procedure Act ("APA").[46] The Conservation Groups raised three primary arguments:

1. that the EA only analyzed two polar opposite alternatives and failed to consider reasonable middle-ground options;
2. that the EA provided an economically skewed analysis by highlighting the economic benefits of the expansion while ignoring its socioeconomic and environmental costs; and
3. that the EA failed to adequately analyze the short and long-term climate impacts of increased methane emissions by ignoring the best available scientific data on GHG warming potential.[47]

Before EO 13,990, in reliance on BLM's approval, ECCR invested significantly in the permitting and development of the expansion areas.[48] ECCR secured extended bond coverage of

[42] ECCR's Response ¶ 7, at 5.

[43] Exec. Order No. 13,990, Protecting Public Health and the Environment and Restoring Science To Tackle the Climate Crisis, 86 Fed. Reg. 7,037 (Jan. 25, 2021). *See* ECCR's Response ¶ 6, at 5;

[44] *Id.*; Exec. Order No. 13,990, 3 C.F.R. 272 (2021).

[45] *Id.*; Exec. Order No. 13,990, 3 C.F.R. 272 (2021).

[46] Complaint ¶ 1, at 1.

[47] Complaint ¶ 4, at 2-3.

[48] ECCR's Response ¶ 14, at 4.

$1,588,000 as required by BLM and paid $11,500 to BLM to offset the costs of preparing a new Resource Recovery and Protection Plan ("R2P2").[49] ECCR also prepared and submitted to DOGM a revision of its mining and reclamation plan for operations within the expansion areas.[50] On November 21, 2022, DOGM determined the mine permit application to be administratively complete, and on November 22, 2022, DOGM notified OSMRE of the complete application and requested a federal mine plan review.[51] Operations at the Mine ceased in September 2022 due to a mine fire, and ECCR began working with the Federal Mine Safety and Health Administration ("MSHA") to reopen the Mine.[52] The record does not reflect the status of the Mine as of the filing of this Order.

On January 20, 2025, President Trump began his second term. President Trump almost immediately rescinded EO 13,990[53] and enacted sweeping new executive orders that are similar in nature to EO 13,783.[54]

## 2 STANDARD OF REVIEW

"[Remand] shows proper respect for agency decision making, enables the [agency] to respond to emerging case law in the courts of appeals, and comports with Supreme Court guidance."[55] "Voluntary remand is generally appropriate: (1) when new evidence becomes

---

[49] *Id.* ¶¶ 15-16, at 4-5.

[50] *Id.* ¶ 14, at 4.

[51] *Id.*

[52] *Id.* ¶ 11, at 4.

[53] Exec. Order No. 14,148, Initial Rescissions of Harmful Executive Orders and Actions, 90 Fed. Reg. 8,237 (Jan. 28, 2025).

[54] Exec. Order No. 14,154, Unleashing American Energy, 90 Fed. Reg. 8,353 (Jan. 29, 2025); Exec. Order No. 14,156, Declaring a National Energy Emergency, 90 Fed. Reg. 8,243 (Jan. 28, 2025); Exec. Order No. 14,270, Zero-Based Regulatory Budgeting To Unleash American Energy, 90 Fed. Reg. 15,643 (Apr. 15, 2025).

[55] *Rangel-Perez v. Holder*, 523 F. App'x 509 (10th Cir. 2013).

available after an agency's original decision was rendered; or (2) when 'intervening events outside of the agency's control" may affect the validity of an agency's actions.'"[56] As to the first scenario, "[r]emand is particularly appropriate 'if the agency's motion is made in response to intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation.'"[57]

## 3 DISCUSSION

Two major factors make remand appropriate. First, a key analysis by BLM has, in other cases, been found deficient. Second, new executive orders have issued with changes of presidential administrations.

### 3.1.1 GHG Decisions by Other Courts Favor Remand

BLM argues that remand is necessary because the "GHG analysis in the EA, in certain respects followed the analyses in other BLM coal leasing decisions . . . that have now been found to be deficient."[58] BLM is correct. Many federal courts, both trial[59] and appellate,[60] have found BLM's GHG reasoning "deficient."

[56] *Savelkoul v. Driscol*, No. 23-CV-02792-GPG, 2025 WL 3300334, at *3 (D. Colo. Mar. 7, 2025) (quoting *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001)).

[57] *Saitell Tech. USA, Inc. v. Nielsen*, No. 18-CV-01214-PAB, 2019 WL 13214047, at *1 (D. Colo. Feb. 1, 2019) (*quoting Util. Solid Waste Activities Grp. v. Env't Prot. Agency*, 901 F.3d 414 (D.C. Cir. 2018), *judgment entered*, No. 15-1219, 2018 WL 4158384 (D.C. Cir. Aug. 21, 2018)).

[58] Motion at 6 (*citing 350 Montana v. Haaland*, 50 F.4th 1254, 1272 (9th Cir. 2022); *WildEarth Guardians v. Bernhardt*, CV 17-80- BLG-SPW, 2021 WL 363955, at *9 (D. Mont. Feb. 3, 2021)).

[59] *Utah Physicians for a Healthy Env't v. U.S. Bureau of Land Mgmt*., 528 F. Supp. 3d 1222 (D. Utah 2021); *WildEarth Guardians v. Bernhardt*, CV 17-80- BLG-SPW, 2021 WL 363955, at *9 (D. Mont. Feb. 3, 2021); *Montana Env't Info. Ctr. v. Haaland*, No. CV 19-130-BLG-SPW, 2022 WL 4592071 (D. Mont. Sept. 30, 2022); *Montana Env't Info. Ctr v. Halland*, No. CV 19-130-BLG-SPW, 2024 WL 1406535, at *5 (D. Mont. Apr. 2, 2024); *Xerces Soc'y for Invertebrate Conservation & Ctr. for Biological Diversity v. Watson*, No. 3:22-CV-00790-HZ, 2025 WL 1736922 (D. Or. June 23, 2025);

[60] *Dine Citizens*, 59 F.4th at 1016; *350 Montana*, 50 F.4th at 1272.

### 3.1.2 The New Executive Orders Favor Remand

The legal landscape has shifted further still: President Trump has returned to office; rescinded Executive Order 13,990;[61] and issued sweeping new executive orders that replace, but do not reinstate, EO 13,783.[62] Remand is not merely the best option; it is the only path that allows BLM to respond to "intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation."[63] The EA BLM relied on in January 2021 is now a relic of two administrations past.

### 3.1.3 ECCR's Opposition Provides No Basis to Deny Voluntary Remand

ECCR opposes remand, arguing that remand would place "in jeopardy ECCR's interests in the Leases, and particularly the coal reserves added by lease modification." [64] ECCR raises effectively three opposition arguments: (1) ECCR's contractual rights will be impacted by remand;[65] (2) Utah and Emery County will lose tax dollars;[66] (3) BLM has not shown an entitlement to a voluntary remand before a decision on the merits.[67] In the alternative, ECCR

---

[61] Exec. Order No. 14,148, Initial Rescissions of Harmful Executive Orders and Actions, 90 Fed. Reg. 8,237 (Jan. 20, 2025); Exec. Order No. 14,156, Declaring a National Energy Emergency, 90 Fed. Reg. 8,433 (Jan. 20, 2025); Exec. Order No. 14,391, Adjusting Certain Delegations Under the Defense Production Act, 91 Fed. Reg. 13,199 (Mar. 13, 2026).

[62] Exec. Order No. 14,154, Unleashing American Energy, 90 Fed. Reg. 8,353 (Jan. 29, 2025); Exec. Order No. 14,156, Declaring a National Energy Emergency, 90 Fed. Reg. 8,243 (Jan. 28, 2025); Exec. Order No. 14,270, Zero-Based Regulatory Budgeting To Unleash American Energy, 90 Fed. Reg. 15,643 (Apr. 15, 2025).

[63] *SKF USA Inc. v. United States*, 254 F.3d 1022, 1028 (Fed. Cir. 2001) (*citing Lawrence v. Chater,* 516 U.S. 163, 169 (1996)).

[64] ECCR's Response at 9.

[65] *Id*. at 7.

[66] *Id*. at 8-9.

[67] *Id*. at 9.

asks that any remand be without vacatur.[68] BLM replies that ECCR's opposition "provides no basis for denial of the motion."[69]

Each of ECCR's oppositions will be addressed in turn. The Conservation Groups do not oppose remand, but request that the certain safeguards be put in place. For the reasons stated below, ECCR's opposition provides no ground to deny voluntary remand without vacatur.

3.1.3.1 Voluntary Remand Without Vacatur Equitably Preserves ECCR's Contractual Rights.

ECCR's first opposes remand "because ECCR's leasehold rights to develop the additional coal reserves will be compromised."[70] ECCR believes BLM "may not stand by its nearly two-year old decision to approve the Lease Modifications, placing in jeopardy ECCR's interests in the Leases, and particularly the coal reserves added by lease modification."[71] ECCR's fear of a breach of contract misunderstands remand without vacatur. BLM is correct in calling these fears "speculative."[72]

Remand without vacatur preserves ECCR's leasehold rights on remand to BLM.[73] ECCR argues "[t]here is no equity in allowing ECCR to intervene in these judicial proceedings to protect its interests, only to then, prematurely, hand the case back to BLM to change their leasing

[68] *Id*. at 19.

[69] BLM's Reply at 4.

[70] ECCR's Response at 8.

[71] *Id*. at 9.

[72] BLM's Reply at 6.

[73] *Solenex LLC v. Bernhardt*, 962 F.3d 520, 524 (D.C. Cir. 2020) (Discussing how an oil and gas lease agreement was "suspended" while on remand in 1985 and stayed suspended until the Interior Secretary canceled the contract in 2015). After a redetermination on remand, if BLM does terminate the contract, ECCR may then file its own action before the Court of Federal Claims. This is articulated by the Tenth Circuit in *Robbins v. U.S. Bureau of Land Mgmt.*, 438 F.3d 1074 (10th Cir. 2006); by the D.C. Circuit in *Solenex LLC v. Bernhardt*, 962 F.3d 520, 530 (D.C. Cir. 2020); and by the Court of Federal Claims in *Griffin & Griffin Expl., LLC v. United States*, 116 Fed. Cl. 163 (2014)

decision under the guise of a remand."[74] But courts in this circuit[75] and across the country[76] all acknowledge "the 'remedy of remand without vacatur is within a reviewing court's equity powers under the APA."[77] Remand without vacatur is the appropriate equitable remedy here.

ECCR's fear is that BLM will terminate the contract even without vacatur. This may occur but ECCR will retain judicial remedies.

3.1.3.2 ECCR Does Not Have Prudential Standing for Non-Parties.

ECCR's next argument is that remand would "harm [] the interests of the State of Utah, Emery County and the Utah School and Institutional Trust Lands Administration ("SITLA")."[78] To raise other parties' arguments, ECCR would need prudential standing. "The prudential standing doctrine encompasses various limitations, including 'the general prohibition on a litigant's raising another person's legal rights.'"[79]

ECCR lacks prudential standing to raise this argument on behalf of the State of Utah, Emery County, and SITLA.

---

[74] ECCR's Response at 11.

[75] *Friends of the Floridas v. United States Bureau of Land Mgmt.*, 746 F. Supp. 3d 1039 (D.N.M. 2024), *appeal dismissed sub nom. Friends of Floridas v. United States Bureau of Land Mgmt.*, No. 24-2164, 2025 WL 3130815 (10th Cir. July 8, 2025) ("[E]quitable considerations in this case warrant a remand without vacatur in this case.").

[76] *Sierra Club v. Van Antwerp,* 526 F.3d 1353, 1369 (11th Cir.2008); *Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271 (11th Cir. 2015); *Ctr. for Biological Diversity v. U.S. Forest Serv.*, No. 2:17-CV-372, 2021 WL 855938 (S.D. Ohio Mar. 8, 2021); *Ackerman Bros. Farms, LLC v. United States Dep't of Agric.*, No. 1:17-CV-11779, 2021 WL 6133910 (E.D. Mich. Dec. 29, 2021); *Lane v. United States*, 338 F. Supp. 3d 1324 (S.D. Ga. 2018); *IAP Worldwide Servs., Inc. v. United States*, 160 Fed. Cl. 57 (2022).

[77] *City of Council Bluffs v. United States Dep't of the Interior*, No. 117CV00033SMRCFB, 2019 WL 10854533, at *3 (S.D. Iowa Aug. 12, 2019) (*quoting Black Warrior Riverkeeper, Inc. v. U.S. Army Corps of Eng'rs*, 781 F.3d 1271, 1290 (11th Cir. 2015)).

[78] ECCR's Response at 8.

[79] *The Wilderness Soc. v. Kane Cnty., Utah*, 632 F.3d 1162 (10th Cir. 2011) (*quoting Allen v. Wright,* 468 U.S. 737, 751 (1984)).

3.1.3.3 A Decision on The Merits Is Not Required for Voluntary Remand.

ECCR argues that BLM has fallen "short of justifying voluntary remand in advance of any determination on the merits."[80] ECCR argues that a full decision on the merits is either necessary or required,[81] but ECCR presents no statutory authority or case law to support its position.

ECCR's arguments are more concerned with the adverse effects of vacatur. As BLM states, "neither BLM's motion nor Plaintiffs' response have requested vacatur. ECCR's arguments about vacatur are thus a red herring."[82] As ECCR has acknowledged, BLM has not "foreclose[d] the possibility that BLM might reach the same outcome by addressing procedural errors and offering further explanation."[83]

ECCR's judicial economy argument is not persuasive. ECCR theorizes a new BLM determination is likely to draw a challenge from Conservation Groups, and that vacatur of the leasehold rights is likely to draw a challenge from ECCR itself.[84] Remand, ECCR says, thus does not avoid further litigation; it merely reshuffles which party returns to seek review. But more importantly, BLM should have the opportunity to amend its decision because "[v]oluntary remands conserve judicial resources by allowing agencies to correct their errors *before* courts reach merits determinations requiring them to do so."[85]

---

[80] ECCR's Response at 9.

[81] *Id*. at 7, 9-11.

[82] BLM's Reply at 5.

[83] ECCR's Response at 16 (quoting Motion at 9).

[84] ECCR's Response at 12-13.

[85] *In re Clean Water Act Rulemaking*, 60 F.4th 583, 593 (9th Cir. 2023).

Federal courts often grant voluntary remand without a determination on the merits.[86] Federal courts have found no prejudice to suspension of litigation because "the prejudice to [the parties] is not the loss of ability to pursue all challenges to the [administrative finding], but the loss of the ability to do so *now*."[87] If litigation is inevitable, as ECCR asserts, then BLM should be afforded the opportunity to first make its best reasoned decision.

### 3.2 Remand Without Vacatur is the Only Remedy Available

Vacatur is not available at this early stage of litigation because the administrative record has not been provided for review.[88] An agency's decision may be vacated after judicial consideration of the merits and a finding that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."[89]

In *WildEarth Guardians v. Bernhardt*, environmental groups challenged BLM's compliance with NEPA in twenty-seven oil and gas leasing decisions across multiple states, including Utah.[90] BLM moved for voluntary remand without vacatur, and the motion was granted in full, on the reasoning that an agency's remand request is generally granted when the agency intends to take further action on the decision under review.[91] Remand without vacatur

[86] *Savelkoul*, 2025 WL 3300334 at *3; *Commonwealth of Massachusetts, et al., v. Department of Education, et al.*, No. CV 26-11229-FDS, 2026 WL 2350106 (D. Mass. Aug. 11, 2026); *Frito-Lay, Inc. v. U.S. Dep't of Lab.*, 20 F. Supp. 3d 548 (N.D. Tex. 2014); *Trujillo v. Bd. of Educ. of Albuquerque Pub. Sch.*, 212 Fed. App'x. 760, 765 (10th Cir. 2007); *EthylCorp. v. Browner*, 989 F.2d 522, 524 (D.C. Cir. 1993); *NRDC v. EPA*, 38 F.4th 34, 60 (9th Cir. 2022); *All. for the Wild Rockies v. Marten*, 789 F. App'x 583, 584 (9th Cir. 2020); *California Communities Against Toxics v. U.S. E.P.A.*, 688 F.3d 989 (9th Cir. 2012); *National Parks Conservation Ass'n v. U.S. EPA*, 803 F.3d 151, 157 (3d Cir. 2015).

[87] *Friends of Animals v. Williams*, 628 F. Supp. 3d 71, 78 (D.D.C. 2022)

[88] Motion at 9; ECCR's Response ¶ 26 at 6.

[89] 5 U.S.C.A. § 706(2)(A); *Carpenters Indus. Council v. Salazar*, 734 F. Supp. 2d 126, 135 (D.D.C. 2010); *WildEarth Guardians v. Bernhardt*, No. 20-cv-56, 2020 WL 6255291, at *1 (D.D.C. Oct. 23, 2020); *Xerces Soc'y for Invertebrate Conservation & Ctr. for Biological Diversity v. Watson*, No. 3:22-CV-00790-HZ, 2025 WL 1736922 (D. Or. June 23, 2025).

[90] *WildEarth Guardians*, 2020 WL 6255291, at *1.

[91] *Id*. at *1.

was warranted because the underlying EAs, FONSIs, and DNAs had never been reviewed on the merits, leaving no independent basis to find the leasing decisions unlawful or to vacate them.[92] In that case, the plaintiffs opposed the motion, but cited no authority for vacating agency action that had not been reviewed, and the cases they relied on all involved situations where the merits had in fact been reviewed.[93] Accordingly, all the challenged leasing decisions, including those in Utah, were remanded to BLM for further NEPA analysis without being vacated.[94]

*WildEarth Guardians* is similar to this case in many respects: The Conservation Groups challenge BLM's compliance with NEPA regarding a leasing decision in Utah.[95] BLM has moved for voluntary remand without vacatur because BLM intends to take further action on the decision under review. The underlying administrative record has not been provided for a review on the merits.[96] In *WildEarth Guardians*, vacatur was sought, but premature. Here, no party is requesting vacatur. Though ECCR aggressively opposes vacatur,[97] it was neither requested nor available at this stage of litigation.

### 3.3 Safeguards Are Appropriate

The Conservation Groups do not oppose remand but instead request that certain safeguards be placed on BLM.[98] BLM does not oppose the request and says BLM intends "to observe or be subject to some of these conditions."[99] ECCR does not oppose these conditions,

---

[92] *Id*.

[93] *Id*. at *1-*2.

[94] *Id*. at *2.

[95] *Id.* at *1; Complaint, docket no. 2, filed June 10, 2022.

[96] *Id.* at *1; Motion at 10.

[97] ECCR's Response at 13-19.

[98] Conservation Groups' Response at 3.

[99] Reply at 2.

but only opposes vacatur (which no one seeks).[100] The Conservation Groups' requested safeguards are:

1) Order BLM to complete the remand process in a reasonable amount of time, not to exceed 12 months from this Court's order granting voluntary remand;
2) Require BLM to file quarterly status reports to inform the Court and the Parties of its progress on remand; and
3) Retain jurisdiction throughout the remand process to ensure timely compliance with this Court's order.[101]

These conditions have been imposed by other federal courts in similar cases.[102] Therefore, these safeguards will be imposed on BLM while this matter is on remand.

## 4 ORDER

IT IS HEREBY ORDERED that BLM's Motion for Voluntary Remand Without Vacatur[103] is GRANTED.

IT IS FURTHER ORDERED:

1. This matter is REMANDED TO THE BUREAU OF LAND MANAGEMENT.

   a. BLM is ordered to complete the remand process in 18 months from the date of this Order;

---

[100] ECCR's Response at 18-19.

[101] Conservation Groups' Response at 3.

[102] *Basinkeeper v. U.S. Army Corps of Eng'rs*, No. CV 15-6982, 2016 WL 3180643 (E.D. La. June 8, 2016); *Commonwealth of Massachusetts, et al., v. Department of Education, et al*., No. CV 26-11229-FDS, 2026 WL 2350106 (D. Mass. Aug. 11, 2026); *Ctr. for Env't Health v. Vilsack*, No. 18-CV-01763-RS, 2022 WL 658965 (N.D. Cal. Mar. 4, 2022); *N. Alaska Env't Ctr. v. Haaland*, No. 3:20-CV-00187-SLG, 2022 WL 1556028 (D. Alaska May 17, 2022), *opinion clarified*, No. 3:20-CV-00187-SLG, 2023 WL 3661998 (D. Alaska May 25, 2023), and *opinion clarified*, No. 3:20-CV-00187-SLG, 2023 WL 3661998 (D. Alaska May 25, 2023).

[103] Federal Defendants' Motion for Voluntary Remand Without Vacatur and Memorandum in Support, docket no. 42, filed November 28, 2022.

b. BLM is ordered to file status reports every 90 days to inform this Court and the Parties of its progress on remand; and

c. The Court will retain jurisdiction while this case is on remand.

2. The Motion to Intervene filed by Emery County, SITLA, and State of Utah[104] is DENIED AS MOOT.

3. The Clerk of Court must ADMINISTRATIVELY CLOSE THE CASE.

Signed August 19, 2026.

BY THE COURT

David Nuffer
United States District Judge

[104] Motion to Intervene, docket no. 39, filed November 1, 2022.